*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HORTON/LEE, Minors.

UNPUBLISHED
November 20, 2024
1:44 PM

No. 370031
Wayne Circuit Court
Family Division
LC No. 21-001277-NA

Before: K. F. KELLY, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to her six minor children: CCH; CLH; DML; OCL; DKL; and AAH ("the minor children"). We affirm.

## I. FACTUAL BACKGROUND

This case involves the termination of respondent-mother's parental rights to her six minor children.[1] D. Lee ("Lee") is the biological father of CCH, CLH, and AAH, and the putative father of DML, OCL, and DKL. On March 17, 2022, after a no-contest plea, the trial court terminated Lee's parental rights to CCH and CLH after Lee sexually assaulted CCH multiple times.[2] The trial court also terminated the rights of DML, OCL, and DKL's unknown father.

After the termination of Lee's parental rights, the children remained in respondent-mother's care. Respondent-mother began living with her new partner, A. Johnson ("Johnson"), who had a past conviction of second-degree criminal sexual conduct (CSC-II). On June 19, 2022,

---

[1] At the time this case was initiated, AAH was not yet born. The Michigan Department of Health and Human Services (DHHS) subsequently petitioned for the termination of respondent-mother's parental rights to AAH after her birth.

[2] In this case, the trial court also terminated Lee's parental rights to AAH. Lee is not a party to this appeal.

Father's Day, respondent-mother invited Lee to her home, telling him that she was stressed and needed help with the children.[3] While at the home, Johnson and Lee got into an altercation, resulting in Johnson shooting Lee. CCH and CLH stated in a forensic interview that they saw Johnson shoot Lee. Petitioner DHHS sought termination of respondent-mother's parental rights to the minor children at the initial disposition. The trial court determined that reasonable efforts were not required. The trial court also suspended parenting time.

Throughout the duration of the case, the children demonstrated mental-health concerns and behavioral issues. The children were separated and moved to different placements, including some relative placements and placements with fictive kin. There were multiple instances of relatives and fictive kin violating safety plans and allowing the children to see respondent-mother, in violation of the trial court's order. After an adjudication, the trial court found that statutory grounds for termination existed under MCL 712A.19b(3)(j). A best-interests hearing was held, and the trial court determined that termination of respondent-mother's parental rights was in the minor children's best interests. This appeal followed.

## II. STANDARD OF REVIEW

"We review for clear error a trial court's decision regarding reasonable efforts." *In re Sanborn*, 337 Mich App 252, 257; 976 NW2d 44 (2021). "We review the trial court's determination of statutory grounds for clear error." *Id.* at 272. "We review for clear error the trial court's determination regarding the child[]'s best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022) (quotation marks and citation omitted).

## III. REASONABLE EFFORTS

Respondent-mother argues that the trial court erred by terminating her parental rights because DHHS did not make reasonable efforts toward reunification.

"Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2)." *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). Under MCL 712A.19a(2)(a), "reasonable efforts to reunify the child and family are not required if '[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.' " *In re Rippy*, 330 Mich App at 355, quoting MCL 712A.19a(2)(a).

MCL 722.638(1) provides that DHHS should "submit a petition for authorization" if any of the following aggravating circumstances are present:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the

---

[3] Respondent-mother denied this at her best-interests hearing, claiming that Lee showed up uninvited. However, respondent-mother told a detective that she invited Lee to her home.

child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

> (*i*) Abandonment of a young child.

> (*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

> (*iii*) Battering, torture, or other serious physical harm.

> (*iv*) Loss or serious impairment of an organ or limb.

> (*v*) Life threatening injury.

> (*vi*) Murder or attempted murder.

> (b) The department determines that there is risk of harm, child abuse, or child neglect to the child and either of the following is true:

> (*i*) The parent's rights to another child were terminated as a result of proceedings under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, or a similar law of another state and the parent has failed to rectify the conditions that led to the prior termination of parental rights. . . . [MCL 722.638(1).]

Under MCL 722.638(2), DHHS is required to request termination at the initial disposition, "[i]n a petition as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk." MCL 722.638(2). In this case, DHHS requested termination at initial disposition because respondent-mother placed her children "at an unreasonable risk of harm" by inviting Lee to her home, with the children present, knowing his parental rights were terminated for sexually abusing his daughter. See MCL 722.638(1)(a)(*ii*).

We conclude that the trial court was not required to make reasonable efforts toward reunification. MCL 722.638(2) specifically differentiates between parents who are "suspected perpetrator[s]" and parents who are "suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk." MCL 722.638(2). Under the statute, DHHS "shall include a request for termination of parental rights at the initial dispositional hearing" in both circumstances. *Id*.

In this case, although respondent-mother was not a suspected perpetrator, and did not cause the sexual abuse of CCH, the trial court determined that she did place her children at risk by allowing Lee into her home, with her children present, knowing his rights to the children were terminated. Respondent-mother knew that Lee sexually abused CCH, and she knew that Lee was not allowed to have contact with the children. Further, at the time this case was initiated, respondent-mother was in a relationship and living with Johnson, who was convicted of CSC-II, in a case involving a minor under the age of 13. When Lee was at the home, at least some of the children witnessed Johnson shoot Lee. The facts show that respondent-mother's poor judgment, poor choice in men, and careless decision-making placed the children in dangerous situations.

-3-

Although respondent-mother did not commit sexual abuse against CCH, respondent-mother did subject CCH to abuse by continuing to allow Lee into her life, knowing that he sexually assaulted CCH on multiple occasions. Given this conduct by respondent-mother, it is reasonable to infer that she placed all of her children at an unreasonable risk of harm. The trial court therefore did not err by finding DHHS was not required to make reasonable efforts toward reunification.[4]

## IV. BEST INTERESTS

Respondent-mother argues that the trial court erred by finding termination of her parental rights was in the children's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). In this case, respondent-mother pleaded no contest to the statutory grounds, and the issue of statutory grounds is not raised on appeal. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013) (footnote omitted). "The trial court should weigh all the evidence available to determine the child[]'s best interests." *In re White*, 303 Mich App at 713 (footnote omitted).

> In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party. [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home, are all factors for the court to consider when deciding whether termination is in the best interests of the child. The trial court may also consider the child's age, inappropriate

---

[4] To the extent respondent-mother suggests that the trial court erred by finding statutory grounds for termination under MCL 712A.19b(3)(j), the issue is abandoned on appeal. "Insufficiently briefed issues are deemed abandoned on appeal." *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 413; 766 NW2d 874 (2009). "[T]his Court need not address an issue that is given only cursory consideration by a party on appeal." *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). Respondent-mother's brief on appeal appears to raise a statutory grounds argument. However, respondent-mother merely argues that statutory grounds were not met because of lack of reasonable efforts. We have explained that "the requirement that reasonable efforts be made toward reunification is distinct from the requirement that at least one statutory ground for termination of parental rights be established by clear and convincing evidence." *In re MJC*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 5. Respondent-mother failed to raise a distinct statutory grounds argument.

In any event, given respondent-mother's longstanding failure to attempt to protect her children from sexual abuse, we conclude that the trial court did not clearly err by finding that MCL 712A.19b(3)(j) was satisfied. See MCL 712A.19b(3)(j) (providing that termination of parental rights is warranted when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent").

parenting techniques, and continued involvement in domestic violence. It may further consider visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption. [*In re Sanborn*, 337 Mich App at 276-277 (quotation marks and citations omitted).]

We conclude that the trial court did not clearly err by finding that termination of her parental rights was in the best interests of the children. The trial court carefully considered the totality of the circumstances in this case when making its best-interests determination. The trial court considered respondent-mother's poor judgment and dangerous decision-making, not only when allowing Lee to see her children, but throughout the duration of this case. Respondent-mother has been accused of manipulating her story and convincing others to lie for her. She threatened the life of foster care workers and law enforcement. She has a history of "engaging in questionable relationships," including being in a relationship with two men who have sexually assaulted minors. See *id*. at 277.

The trial court discussed the children's need for stability and permanence. Throughout the case, the children have been separated and moved to different foster homes. Many of the children have severe mental health concerns. CCH was hospitalized multiple times throughout the case due to suicidal and homicidal ideations. CLH was also hospitalized for mental-health reasons. The children have presented behavioral issues, and have not been able to consistently have sibling visits due to behavioral concerns. Many of the children have been severely traumatized by respondent-mother.

Respondent-mother argues the children should be placed with relatives, as an alternative to termination. "[A] child's placement with relatives weighs against termination." *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). "[T]he fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interest." *In re Olive/Metts Minors*, 297 Mich App at 43 (quotation marks and citation omitted). "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interests determination and requires reversal." *Id*.

In this case, the trial court explicitly considered relative placement but found that termination was appropriate. Throughout this case, the children were placed with various relatives. However, at the time of termination proceedings, most of the children were in licensed, nonrelative foster homes. When the children were placed with relatives and fictive kin, respondent-mother did not respect boundaries and attempted to see the children, in violation of court orders. After AAH was born, respondent-mother removed AAH and DKL from where they were placed in the care of the fictive kin. If the children were to be placed with relatives, there is a high risk respondent-mother would continue to attempt contact with the children. The trial court explained that it is in the best interests of the children to avoid contact with respondent-mother. The children are traumatized, and contact with respondent-mother could trigger further negative mental health consequences.

The record indicates that the trial court thoroughly considered the best-interest factors and the circumstances of this case when making its best-interests determination. The trial court made

individualized determinations after carefully examining the unique challenges and needs of each child. The trial court did not clearly err by finding termination was in the children's best interests.

## V. CONCLUSION

DHHS was not required to make reasonable efforts to reunify respondent-mother with the children. The trial court did not clearly err by finding termination of respondent-mother's parental rights was in the best interests of her children. We affirm.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan